# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

RONALD E. DUDLEY,

                Petitioner,    :                     Case No. 3:13-cv-058

   - vs -                               District Judge Timothy S. Black
                                         Magistrate Judge Michael R. Merz

JASON BUNTING, Warden,

                Respondent.    :

---

# REPORT AND RECOMMENDATIONS

---

This is a habeas corpus case brought *pro se* by Petitioner Ronald Dudley under 28 U.S.C. § 2254.  Dudley seeks release from the twenty to fifty year term of imprisonment he is serving in Respondent's custody upon his conviction by a jury in the Montgomery County Common Pleas Court on counts of rape, kidnapping, attempted rape, and gross sexual imposition (Petition, Doc. No. 2, ¶¶ 1, 3, & 4, PageID 84).

Dudley pleads the following Grounds for Relief:

> **Ground One**:  Denial of Effective Assistance of Counsel at Trial
>
> **Supporting Facts:**  The Second District Court of Appeals has already determine[d] the first prong of Ineffective Assistance test in determining whether counsel was Ineffective at trial. By Stating Defense Counsel should have filed a motion to suppress. Petitioner now provides in his writ of Habeas Corpus the second prong of the Ineffective Assistance test.  Petitioner now demonstrates the prejudice portion of the Ineffectiveness in this case, Counsel Prejudiced defendant at trial by failing to file a motion to Suppress Statements that derived from a Illegal Custodial Interrogation. The results of Counsel failing to file a Motion to Suppress Statements that were used against defendant at the closing, and at the Opening,

as well as all throughout the trial Violating defendant's right against (Self Incrimination) violation of the 5th Amendment of the United States Constitution.

**Ground Two:** Conviction obtained by violation of the protection against Double Jeopardy.

**Supporting Facts:** Trial counsel rendered Ineffective Assistance of counsel by failing to object to the Consecutive Sentences, trial court committed reversible error by Sentencing Petitioner on separate sentences [f]or Rape and Kidnapping in violation of the protections against double jeopardy. Ohio Law has settled this conflict with recent cases dealing with the conduct of defendant's overruling prior decisions dealing with consecutive sentences as in this case.

**Ground Three:** Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.

**Supporting Facts**: Montgomery County Prosecutors office violated Petitioners Constitutional right by destroying all favorable evidence to defendant in bad faith. Additionally, the Prosecutors office failed to disclose favorable evidence from the Miami Crime Lab DNA results on March 24th 2008, this DNA results were not disclosed to defendant until August 8th 2008 two days before Petitioner went to trial on August 11th 2008. Defendant was unable to put on a proper defense as all witnesses had either did [sic] or whereabouts were unknown due to prosecutors negligence of destroying all the evidence within the property of the Montgomery County Sheriff office, after being advised to hold all evidence.

**Ground Four:** Conviction obtained by pre-indictment delay in violation of the 5th and 6th Amendment[s] of the United States Constitution.

**Supporting Facts:** When the Montgomery County Prosecutors office issued an Indictment against Petitoner [sic] 11 years after the commission of the crime. Petitioner was prejudiced due to all the protections within PreIndictment delay to Include: Lost [sic] of Memory, Evidence Destroyed; Witnesses deceased: Anxiety Caused Unable to put on a proper defense due to Prosecutor's negligence in this case, Detectives failed to get Involved: Chain of Custody never established.

**Ground Five:** Denied access to the Due Process and Equal Protection Clause of Ohio laws.

**Supporting Facts**: The court of Appeals erroneously denied defendant access to file his Application for 26(B) to re-open his appeal, The court of appeals decision was based due to a Clerical Error/incorrect case number. The merits of the brief of defendant's application were all correct and in compliance with appellate rules. The Second district court of appeals denied petitioner access for his incorrect case number, prejudiced all of defendant's [eight] issues his counsel failed to raise on direct appeal. Defendant raised: (1) Trial court abuse of discretion for failing to grant a continuance when the state supplied new DNA test result: (2) Trial court erred when it imposed court cost in its sentencing entry, failing to orally advise defendant: Petitioner was denied exculpatory evidence by the state: (3) Trial court erred by dismissing Petitioner Pre Indictment delay Motion: (4) Prosecution destroyed all evidence in this case: (5) Petitioner was denied effective assistance of counsel by the cumulative error of trial counsel. (6) Trial court abused its discretion by overruling Petitioners Motion for new trial based Blood Test, which disclosed a strong probability the result would have been different. (7) Petitioner was denied due process when the state failed to prove chain of custody. Ground (2) has been reversed and remanded for Re-Sentencing, where Petitioner cost was vacated on 12-12-12.

**Ground Six**: Denied protection of *Miranda* when Montgomery County Detective performed a [sic] Illegal Custodial Interrogation.

**Supporting Facts:** Petitioner was in custody when Montgomery County detective Olinger performed a Illegal Interrogation on Petitioner. The statements petition made to Detective was central to the States Case, Petitioner constitutional Protections were violated when detective failed to provide any warnings as required in Miranda. This is a violation that all Petitioners are entitled to when Custodial Interrogations are administered. The Second District Court of Appeals acknowledge Miranda violation, Yet failed to reverse petitioners case for said violations, as the court determined harmless error, Petitioner asserts that ruling denied Petitioner constitutional right to protection of Law in Ohio.

**Ground Seven:** Petitioner was denied right to a fair trial, and Equal Protection in violation of his Constitutional Rights provided with the Sixth and Fourteenth Amendment[s] to the United States Constitution.

> **Supporting Facts:** The State of Ohio failed to establish proper chain of Custody in this case, as Petitioner was denied his right to a fair trial as a result of the trial court never establishing the first authentic beginning of the Chain of Custody. Petitioner claims this denial resulted in the State of Ohio failing to Protect his Constitutional Rights on appeal along with his right to equal protection of the laws.

(Petition, Doc. No. 2, PageID 87-88.)

## Procedural History

On November 28, 1994, a sixteen-year-old young woman, B.C.,[1] was raped in Dayton in the vicinity of the Ridge Avenue bridge over the Stillwater River. Paramedics took her to nearby Grandview Hospital where Dr. Lisa Ward collected vaginal swabs, vaginal smears, and a vaginal aspirate which she placed in a sexual assault kit. *State v. Dudley,* 2010 Ohio 3240, ¶ 13, 2010 Ohio App. LEXIS 2749 (2nd Dist. July 9, 2010). Because B.C. did not know her assailant and there were no suspects, the case became inactive and eventually the physical evidence other than the assault kit was destroyed.

However, in 2003 the Miami Valley Regional Crime Laboratory ("MVRCL") which had custody of the sexual assault kit, submitted sample from a number of such kits to a private lab for DNA testing. The lab was able to obtain a male DNA profile and in June 2005 MVRCL received notice that Dudley matched the sperm fraction from B.C.'s vaginal swab. *Id.* at ¶ 17.

Dudley was indicted by the Montgomery County Grand Jury in September, 2005. After extensive motion practice, the case was tried in August, 2008, and Dudley was found guilty of one count of rape, one count of kidnapping, two counts of attempted rape, and one count of gross sexual imposition. On direct appeal, the Second District affirmed the convictions but remanded

---

[1] Because she was a minor at the time, she is referred to herein by her initials.

for resentencing.  *State v. Dudley, supra.*  The Ohio Supreme Court declined both parties' requests for further review.  *State v. Dudley*, Case No. 2010-1458 (Oct. 27, 2010)(unpublished, copy of slip opinion at Doc. No. 10-2, PageID 678).  While the appellate process was ongoing, Dudley filed a motion for new trial which was denied August 7, 2009, and a petition for post-conviction relief which was denied July 29, 2009.  Dudley appealed from the denial of new trial, but the court of appeals affirmed September 3, 2010.  On February 7, 2011, Dudley filed an application for reopening his direct appeal under Ohio R. App. P. 26(B) which was denied on March 23, 2011.  The Ohio Supreme Court declined further review.

At resentencing on December 21, 2010, the trial court merged the two attempted rape and one gross sexual imposition convictions with the rape conviction and sentenced Dudley to ten to twenty-five years on each of the rape and kidnapping charges with the time to be served consecutively.  The court of appeals affirmed on all issues relevant to this habeas corpus case and the Supreme Court again declined further review.

Dudley first filed for a writ of habeas corpus in this Court in Case No. 3:11-cv-349 on October 6, 2011.  That case was dismissed without prejudice for lack of exhaustion of available state court remedies.  The present case was then filed February 18, 2013.

**Analysis**

For the convenience of the reader in making cross-references, the Grounds for Relief are dealt with in the order that both Respondent and the Petitioner have argued them.

**Ground Five:  Denial of Due Process and Equal Protection on Appeal**

In his Fifth Ground for Relief**,** Dudley asserts the Second District Court of Appeals denied him due process and equal protection of the laws when it refused to consider his Ohio App. R. 26(B) application on the merits because he had filed it under the wrong case number.

The relevant filing, which Dudley asks this Court to review, is a document entitled "Defendant Roanld E. Dudley Application for Re-Opening Pursuant to 26(B)," signed by Dudley and bearing appellate case number C.A. 23613; filed by the Montgomery County Clerk of Courts on October 4, 2010 (Doc. No. 10-3, PageID 901).  It asks the Court of Appeals to reopen the direct appeal to raise assignments of error omitted by appellate counsel Robert Brenner.

On January 28, 2011, the court of appeals denied reopening, holding

> App. R. 26(B) is limited to a claim of Ineffective assistance of appellate counsel.  Dudley's Motion to Reopen asks us to open our decision in which we affirmed the trial court's denial of his post-conviction relief petition, motion for new trial, and imposition of fines. However, Dudley represented himself at the appellate level in this matter, thus he may not now claim that the quality of his own defense on appeal amounted to a denial of effective assistance of oounsel. In other words, Dudley may not argue his own ineffectiveness. Although Dudley had the right to effective assistance of counsel, he waived it by electing to represent himself.

*State v. Dudley*, Case No. 23613 (2nd Dist. Jan. 28, 2011)(unreported, copy of clip opinion at Doc. No. 10-3, PageID 950-951.)  Petitioner moved to reconsider, claiming he was seeking to reopen the July 9, 2010, court of appeals' decision on direct appeal, not the September 3, 2010, denial of relief from the dismissal of his post-conviction petition.  (Doc. No. 10-3, Ex. 55, PageID 953, et seq.)  The court of appeals, in a four-page opinion, denied the motion for reconsideration and explained why it had done so.  It acknowledged that Dudley had filed in the

6

wrong case[2] and noted that *pro se* litigants are "presumed to know the law, and are held to the same standards as other litigants." *State v. Dudley,* Case No. 22931 (2nd Dist. Mar. 23, 2011)(unreported, copy of clip opinion at Doc. No. 10-3, Ex. 56, PageID 958), *quoting Yocum v. Means*, 2002 Ohio 3803, 2002 Ohio App. LEXIS (2nd Dist. 2002). The court of appeals concluded it was not persuaded "to provide [Dudley] with yet another opportunity to contest his conviction and subsequent sentence." *Id.*

Dudley claims that the decision of the Second District Court of Appeals is unfair and a denial of due process (Traverse, Doc. No. 12, PageID 2030-2033). Essentially, the court of appeals' decision amounts to a conclusion that Dudley procedurally defaulted on the claims made in his Application to Reopen by filing it in the wrong case. Dudley says he can show cause to excuse that default. *Id.* at PageID 2031. However, he never states what caused him to file his 26(B) Application in the wrong case.

The procedural default defense in habeas corpus is described by the Supreme Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones,* 238 F.3d 399, 406 (6th Cir. 2000). That is, a petitioner may not raise on federal habeas a federal constitutional right he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72

---

[2] It is not as if Dudley, by typographical error, used a case number that was assigned to some other person's appeal. Rather, he filed his 26(B) Application in his post-conviction appeal case, not in his direct appeal case.

(1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982).  Absent cause and prejudice, a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review.  *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000)(citation omitted); *Murray v. Carrier*, 477 U.S. 478, 485 (1986);  *Engle*, 456 U.S. at 110;  *Wainwright,* 433 U.S. at 87. *Wainwright* replaced the "deliberate bypass" standard of *Fay v. Noia,* 372 U.S. 391 (1963). *Coleman,* 501 U.S. at 724.

The Sixth Circuit Court of Appeals requires a four-part analysis when the State alleges a habeas claim is precluded by procedural default. *Guilmette v. Howes,* 624 F.3d 286, 290 (6th Cir. 2010)(*en banc*); *Eley v. Bagley*, 604 F.3d 958, 965 (6th Cir.), *cert. denied sub nom, Eley v. Hauk,* __ U.S. __, 131 S.Ct. 822 (2010); *Reynolds v. Berry*, 146 F.3d 345, 347-48 (6th Cir. 1998), *citing Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *accord Lott v. Coyle*, 261 F.3d 594, 601-02 (6th Cir. 2001); *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001).

> First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
>                    . . . .
> Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).
>
> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.
>
> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  Here the Ohio courts have a perfectly well understood rule:  to seek relief in a case, a litigant must file the request for relief in that case, not

in some other case the litigant might have or have had in the past in that court. Again, the rule is not about not making typographical errors in a case caption. The Second District enforced that rule against Dudley in this case. There is an obvious and adequate state interest in that rule: papers filed in the wrong case are not likely to be brought to the court's attention by a clerk, especially in a busy appellate court like the Second District. The rule is independent of whether state or federal issues are involved in the misfiled document. There is no federal constitutional requirement that a state court ignore the misfiling of papers in a different one from the one in which relief is sought.

The question, then, is whether Dudley has shown excusing cause. Cause must be something external to the petitioner, something that cannot fairly be attributed to him; it must be some objective factor external to the defense. *Hartman v. Bagley,* 492 F.3d 347, 358 (6th Cir. 2007); *Murray v. Carrier*, 477 U.S. 478 (1986). Here the cause on which Dudley relies is completely internal to him, to wit, his filing the 26(B) application in the wrong case. Thus Dudley has not established excusing cause and prejudice and the claims of ineffective assistance of appellate counsel he seeks to raise in his Fifth Ground for Relief are barred by his procedural default in presenting them to the Second District Court of Appeals.

In the alternative and for sake of completeness, the Magistrate Judge will also consider the ineffective assistance of appellate counsel claims on the merits. The assignments of error which Dudley claims it was ineffective assistance of appellate counsel to fail to raise are as follows:

(1) Trial court abuse of discretion for failing to grant a continuance when the state supplied new DNA test result:

(2) Trial court erred when it imposed court cost in its sentencing entry, failing to orally advise

defendant: Petitioner was denied exculpatory evidence by the state:

(3) Trial court erred by dismissing Petitioner Pre Indictment delay Motion:

(4) Prosecution destroyed all evidence in this case:

(5) Petitioner was denied effective assistance of counsel by the cumulative error of trial counsel.

(6) Trial court abused its discretion by overruling Petitioners Motion for new trial based Blood

Test, which disclosed a strong probability the result would have been different.

(7) Petitioner was denied due process when the state failed to prove chain of custody.

(Quoted from Ground Five, *supra*.)  Proposed assignment of error 2 was later resolved in

Dudley's favor and no longer forms the basis of a claim of ineffective assistance of appellate

counsel.

The governing standard for ineffective assistance of counsel is found in *Strickland v.*

*Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so
> defective as to require reversal of a conviction or death sentence
> has two components.  First, the defendant must show that counsel's
> performance was deficient.  This requires showing that counsel
> was not functioning as the "counsel" guaranteed the defendant by
> the Sixth Amendment.  Second, the defendant must show that the
> deficient performance prejudiced the defense.  This requires
> showing that counsel's errors were so serious as to deprive the
> defendant of a fair trial, a trial whose result is reliable.  Unless a
> defendant makes both showings, it cannot be said that the
> conviction or death sentence resulted from a breakdown in the
> adversary process that renders the result unreliable.

466 U.S. at 687.

> With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly
> deferential. . . .  A fair assessment of attorney performance requires
> that every effort be made to eliminate the distorting effects of

> hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694. *See also Darden v. Wainwright*, 477 U.S. 168 (1986); *Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998); *Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir. 1987). *See generally* Annotation, 26 ALR Fed 218.

The *Strickland* test applies to appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Burger v. Kemp,* 483 U.S. 776 (1987). To evaluate a claim of ineffective assistance of appellate counsel, then, the court must assess the strength of the claim that counsel failed to raise. *Henness v. Bagley*, 644 F.3d 308 (6th Cir. 2011), citing *Wilson v. Parker*, 515 F.3d 682, 707 (6th Cir. 2008). Counsel's failure to raise an issue on appeal amounts to ineffective assistance only if a reasonable probability exists that inclusion of the issue would have changed the result of the appeal. *Id. citing Wilson.* If a reasonable probability exists that the defendant would have prevailed had the claim been raised on appeal, the court still must consider whether the claim's merit was so compelling that the failure to raise it amounted to ineffective assistance of appellate counsel. *Id. citing Wilson.* The attorney need not advance every argument, regardless of merit, urged by the appellant. *Jones v. Barnes*, 463 U.S. 745, 751-752 (1983)("Experienced

advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." 463 U.S. 751-52). Effective appellate advocacy is rarely characterized by presenting every non-frivolous argument which can be made. *Joshua v. DeWitt*, 341 F.3d 430, 441 (6th Cir. 2003). *Williams v. Bagley,* 380 F.3d 932, 971 (6th Cir. 2004), *cert. denied,* 544 U.S. 1003 (2005); see *Smith v. Murray*, 477 U.S. 527 (1986). However, failure to raise an issue can amount to ineffective assistance. *McFarland v. Yukins*, 356 F.3d 688 (6th Cir. 2004), *citing Joshua v. Dewitt,* 341 F.3d 430, 441 (6th Cir. 2003); *Lucas v. O'Dea*, 179 F.3d 412, 419 (6th Cir. 1999); and *Mapes v. Coyle,* 171 F.3d 408, 427-29 (6th Cir. 1999).

"In order to succeed on a claim of ineffective assistance of appellate counsel, a petitioner must show errors so serious that counsel was scarcely functioning as counsel at all and that those errors undermine the reliability of the defendant's convictions." *McMeans v. Brigano*, 228 F.3d 674 (6th Cir. 2000), *citing Strickland* and *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994). Counsel's failure to raise an issue on appeal could only be ineffective assistance if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal. *McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir. 2004), *citing Greer v. Mitchell,* 264 F.3d 663, 676 (6th Cir. 2001), *cert. denied,* 535 U.S. 940 (2002). "Counsel's performance is strongly presumed to be effective." *McFarland, quoting Scott v. Mitchell*, 209 F.3d 854, 880 (6th Cir. 2000)(*citing Strickland*). "To prevail on a claim of ineffective assistance of appellate counsel, a petitioner must show that appellate counsel ignored issues [which] are clearly stronger than those presented." *Webb v. Mitchell,* 586 F.3d 383, 399 (6th Cir, 2009); *Smith v. Robbins*, 528 U.S. 259, 288 (2000), *quoting Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986).

We already know in this case that appellate counsel, Mr. Brenner, considered Dudley's

proposed assignments of error and rejected them because he thought the arguments he actually made were stronger.  The Application to Reopen was supported by a September 8, 2009, letter from Mr. Brenner which reads in part:

> Thank you for your fax. I will tell you that I did not raise every (or even most) of the issues you told me about for your appeal. I just disagree with you on your interpretation of the facts and law. I raised the issues I thought had a chance to win. For any of the other issues that are in the record, you should raise those as an Application to Reopen your appeal pursuant to Appellate Rule 26(8). I am enclosing a copy of that rule with this letter.
>
> The petition for post-conviction relief is for errors that are not in the record. The motion to suppress issue is in the record because the detective testified about what happened there. If there was no information In the record about what happened in that interview it would have been an issue to raise in a petition for post-conviction relief. I hope this helps.

(Doc. No. 10-3 at PageID 917.)

Dudley does not argue his ineffective assistance of appellate counsel claims in terms of the *Strickland* decision.  That is, nothing in his Traverse tells this Court why the proposed assignments of error would have been stronger than the ones Mr. Brenner made.    Instead, Dudley's argument is focused entirely on why it was a denial of due process for the court of appeals not to consider his claims on the merits.

On direct appeal, Dudley's counsel raised the following assignments of error:

> One:  Ronald Dudley was denied the effective assistance of counsel in violation of the Sixth and Fourteenth Amendments of the United States Constitution [12] and Article I Section 10 of the Ohio Constitution.
>
> Two:  Application of SB. 10 [registration and notification provisions for convicted sex offenders] to Ronald Dudley is unconstitutional.

Considering these Assignments of Error, the court of appeals reversed the conviction and

remanded for resentencing after holding that trial counsel was ineffective for failing to move the trial judge to merge the convictions for rape with gross sexual imposition and attempted rape.  In other words, the appeal was in part successful.  It is difficult to argue that claims not made would have been more successful than claims made which succeeded and Dudley does not attempt to make that argument.

Dudley has not shown that his ineffective assistance of appellate counsel claims have merit.  Therefore, if the Court does not dismiss Ground Five as procedurally defaulted, it should dismiss the claim of ineffective assistance of appellate counsel as without merit.

### Ground Three:    Failure of the Prosecution to Disclose Favorable Evidence

In his Third Ground for Relief, Dudley asserts that the prosecutor failed to disclose favorable evidence as required by *Brady v. Maryland*, 373 U.S. 83 (1963).  Respondent asserts this Ground for Relief is barred by Dudley's procedural default in presenting it to the court of appeals on direct appeal (Return of Writ, Doc. No. 11, PageID 1990-1991.)  Dudley asserts the claim is not procedurally defaulted because he included it as one of the proposed assignments of error in his 26(B) Application.

The only kinds of claims which can be made in a 26(B) application are claims of ineffective assistance of appellate counsel.  Including a claim as a proposed assignment of error only resurrects that claim for consideration on the merits if the court of appeals finds it was ineffective assistance of appellate counsel to fail to raise it in the first instance.  If a petitioner's claims in federal habeas rest on different theories than those presented to the state courts, they are procedurally defaulted.  *Williams v. Anderson,* 460 F.3d 789, 806 (6th Cir. 2006); *Lorraine v.*

*Coyle*, 291 F.3d 416, 425 (6th Cir. 2002), *citing Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998); *Lott v. Coyle*, 261 F.3d 594, 607, 619 (6th Cir. 2001)("relatedness" of a claim will not save it). An Ohio App. Rule 26(B) application preserves for habeas review only the ineffective assistance of appellate counsel arguments, not the underlying substantive arguments. *Wogenstahl v. Mitchell*, 668 F.3d 307, 338 (6th Cir. 2012), *citing Lott v. Coyle*, 261 F.3d 594, 612 (6th Cir. 2001). "The *Lott* court explained that permitting an Ohio prisoner to raise a substantive claim in a Rule 26(B) motion "would eviscerate the continued vitality of the procedural default rule; every procedural default could be avoided, and federal court merits review guaranteed, by claims that every act giving rise to every procedural default was the result of constitutionally ineffective counsel." *Id.*

Dudley raised this claim for the first time in the state courts in his petition for post-conviction relief under Ohio Revised Code § 2953.21. Because it was a claim which could have been but was not raised on direct appeal, the court of appeals enforced against him Ohio's criminal *res judicata* doctrine. *State v. Dudley*, 2010 Ohio 4152, ¶ 33, 2010 Ohio App. LEXIS 3524 (2nd Dist. Sept. 3, 2010). Applying the Maupin analysis, Ohio has a doctrine – the criminal *res judicata* doctrine -- under which constitutional error which is predicated on the record on direct appeal must be raised there and is barred from consideration in post-conviction. *State v. Perry,* 10 Ohio St. 2d 175 (1967). The Ohio courts have consistently enforced the rule. *State v. Cole*, 2 Ohio St. 3d 112 (1982); *State v. Ishmail*, 67 Ohio St. 2d 16 (1981). The rule is an adequate and independent state ground. *Durr v. Mitchell*, 487 F.3d 423, 432 (6th Cir. 2007); *Buell v. Mitchell*, 274 F.3d 337 (6th Cir. 2001); *Coleman v. Mitchell*, 268 F.3d 417 (6th Cir. 2001); *Byrd v. Collins*, 209 F.3d 486, 521-22 (6th Cir. 2000); *Rust v. Zent,* 17 F.3d 155, 160-61 (6th Cir. 1994)(citation omitted); *Van Hook v. Anderson*, 127 F. Supp. 2d 899, 913 (S.D. Ohio

2001).  Therefore Dudley is barred by the *res judicata* doctrine unless he can show excusing cause and prejudice, to wit, ineffective assistance of appellate counsel which he has failed to do. Ground Three should be dismissed as procedurally defaulted.


### Ground Four:  Pre-Indictment Delay


In his Fourth Ground for Relief, Dudley asserts he was denied due process by the State's delay in presenting this case to a grand jury.  Respondent asserts this Ground for Relief is procedurally defaulted on the same basis as Ground Three (Return of Writ, Doc. No. 11, PageID 1991.)  Dudley offers the same excusing cause as he offered on Ground Three and it is unavailing for the same reasons.  Ground Four should be dismissed as procedurally defaulted.


### Ground Six:  Admission in Evidence of Statements Obtained During an Illegal Custodial Interrogation

In his Sixth Ground for Relief, Dudley asserts his statements made during custodial interrogation were improperly admitted against him because he was not properly advised of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966).  Respondent asserts this claim is procedurally defaulted because it has never been presented to the Ohio courts and Dudley has no available avenues to do so (Return of Writ, Doc. No. 11, PageID 1991-92.)

Dudley claims excusing cause and prejudice on the same basis as with Grounds Three and Four and that claim is unavailing for the same reasons.  Ground Six should be dismissed as procedurally defaulted.

**Ground Seven:  Failure to Establish the Chain of Custody**

In his Seventh Ground for Relief, Dudley asserts he has been denied due process and equal protection of the laws because he was convicted on evidence as to which the State did not establish the chain of custody.  Dudley claims excusing cause and prejudice on the same basis as with Grounds Three, Four, and Six and that claim is unavailing for the same reasons.  Ground Seven should be dismissed as procedurally defaulted.

Respondent also asserts that Ground Seven is not a cognizable claim in federal habeas corpus (Return of Writ, Doc. No. 11, PageID 1992-93).  Dudley responds that substituting other evidence for the live testimony of the first police detective to handle the evidence, David J. Denle, deprived him of his constitutional right to confront the witnesses against him under *Crawford v. Washington,* 541 U.S. 36 (2004).  However, Dudley admits that Detective Denle was dead by the time of trial.  Under those circumstances, there was no violation of the Confrontation Clause in admitting his report to establish the chain of custody.  Ground Seven is also without merit.

**Ground One:  Ineffective Assistance of Trial Counsel**

In his First Ground for Relief, Dudley asserts he received ineffective assistance of trial counsel when his trial attorney failed to file a motion to suppress the statements taken from him

17

by Detective Olinger in violation of his *Miranda* rights.  Dudley raised this claim as his first assignment of error on direct appeal and the court of appeals decided it as follows:

**[P22]** Dudley's First Assignment of Error is as follows:

**[P23]** "RONALD DUDLEY WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND ARTICLE I SECTION 10 OF THE OHIO CONSTITUTION."

**[P24]** Under this assignment of error, Dudley makes two contentions, which we will separately address. Dudley's first contention is that he was denied the effective assistance of counsel, because his attorney failed to file a motion to suppress statements that Detective Olinger obtained in violation of *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. Dudley contends that he was in custody for *Miranda* purposes when he was interrogated in prison about the alleged rape, which was not the crime for which he was imprisoned. Accordingly to Dudley, Detective Olinger knew that Dudley's DNA matched, and that he only needed to obtain a statement that would deprive Dudley from defending on the issue of consent. Olinger, therefore, should have administered *Miranda* warnings. Dudley notes that he made similar statements after waiving his rights, but contends that these statements are simply a continuance of the improperly obtained statements, because nothing incriminating remained to be said.

**[P25]** "To prevail on a claim of ineffective assistance of trial counsel, a defendant must show both deficient performance, and resulting prejudice." *In re J.W.*, Montgomery App. No. 19869, 2003 Ohio 5096, at P 8, citing *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674.

**[P26]** "To show deficiency, the defendant must show that counsel's representation fell below an objective standard of reasonableness. * * * Trial counsel is entitled to a strong presumption that his conduct falls within the wide range of effective assistance. * * * The adequacy of counsel's performance must be viewed in light of all of the circumstances surrounding the trial court proceedings. * * * Hindsight may not be allowed to distort the assessment of what was reasonable in light of counsel's perspective at the time.

**[P27]** "Even assuming that counsel's performance was ineffective, the defendant must still show that the error had an effect on the judgment. * * * Reversal is warranted only where the defendant demonstrates that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *State v. Jackson*, Champaign App. No. 2004-CA-24, 2005 Ohio 6143, at P 29-30 (citations omitted).

**[P28]** In arguing that counsel's performance was deficient, Dudley relies on *Missouri v. Seibert* (2004), 542 U.S. 600, 124 S.Ct. 2601, 159 L.Ed.2d 643, which addresses a law enforcement technique that attempts to circumvent *Miranda* by "interrogating in successive, unwarned and warned phases." 542 U.S. at 609. In *Seibert*, the Supreme Court of the United States observed that:

**[P29]** "Although we have no statistics on the frequency of this practice, it is not confined to Rolla, Missouri. An officer of that police department testified that the strategy of withholding *Miranda* warnings until after interrogating and drawing out a confession was promoted not only by his own department, but by a national police training organization and other departments in which he had worked. * * * Consistently with the officer's testimony, the Police Law Institute, for example, instructs that 'officers may conduct a two-stage interrogation . . . . At any point during the *pre-Miranda* interrogation, usually after arrestees have confessed, officers may then read the *Miranda* warnings and ask for a waiver. If the arrestees waive their *Miranda* rights, officers will be able to repeat any subsequent incriminating statements later in court.' Police Law Institute, Illinois Police Law Manual 83 (Jan. 2001-Dec. 2003) * * * The upshot of all this advice is a question-first practice of some popularity, as one can see from the reported cases describing its use, sometimes in obedience to departmental policy." Id. at 609-11 (footnotes omitted).

**[P30]** The Supreme Court of the United States went on to note that:

**[P31]** "By any objective measure, applied to circumstances exemplified here, it is likely that if the interrogators employ the technique of withholding warnings until after interrogation succeeds in eliciting a confession, the warnings will be ineffective in preparing the suspect for successive interrogation, close in time and similar in content. After all, the reason that question-first is catching on is as obvious as its manifest purpose, which is to get a confession the suspect would not make if he understood his rights at the outset; the sensible underlying assumption is that with one

confession in hand before the warnings, the interrogator can count on getting its duplicate, with trifling additional trouble. Upon hearing warnings only in the aftermath of interrogation and just after making a confession, a suspect would hardly think he had a genuine right to remain silent, let alone persist in so believing once the police began to lead him over the same ground again. * * * A more likely reaction on a suspect's part would be perplexity about the reason for discussing rights at that point, bewilderment being an unpromising frame of mind for knowledgeable decision. What is worse, telling a suspect that 'anything you say can and will be used against you,' without expressly excepting the statement just given, could lead to an entirely reasonable inference that what he has just said will be used, with subsequent silence being of no avail. Thus, when *Miranda* warnings are inserted in the midst of coordinated and continuing interrogation, they are likely to mislead and 'depriv[e] a defendant of knowledge essential to his ability to understand the nature of his rights and the consequences of abandoning them.' * * * By the same token, it would ordinarily be unrealistic to treat two spates of integrated and proximately conducted questioning as independent interrogations subject to independent evaluation simply because *Miranda* warnings formally punctuate them in the middle." Id. at 613-14 (citation and footnote omitted).

**[P32]** In *Seibert*, the Supreme Court of the United States also distinguished its former decision in *Oregon v. Elstad* (1985), 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222. In *Elstad*, officers had briefly spoken with a young suspect at his home before taking him into custody and administering warnings. The Court noted that:

**[P33]** "The contrast between *Elstad* and this case reveals a series of relevant facts that bear on whether *Miranda* warnings delivered midstream could be effective enough to accomplish their object: the completeness and detail of the questions and answers in the first round of interrogation, the overlapping content of the two statements, the timing and setting of the first and the second, the continuity of police personnel, and the degree to which the interrogator's questions treated the second round as continuous with the first. In *Elstad*, it was not unreasonable to see the occasion for questioning at the station house as presenting a markedly different experience from the short conversation at home; since a reasonable person in the suspect's shoes could have seen the station house questioning as a new and distinct experience, the *Miranda* warnings could have made sense as presenting a genuine choice whether to follow up on the earlier admission.

[P34] "At the opposite extreme are the facts here, which by any objective measure reveal a police strategy adapted to undermine the *Miranda* warnings. * * * The unwarned interrogation was conducted in the station house, and the questioning was systematic, exhaustive, and managed with psychological skill. When the police were finished there was little, if anything, of incriminating potential left unsaid. The warned phase of questioning proceeded after a pause of only 15 to 20 minutes, in the same place as the unwarned segment. When the same officer who had conducted the first phase recited the *Miranda* warnings, he said nothing to counter the probable misimpression that the advice that anything Seibert said could be used against her also applied to the details of the inculpatory statement previously elicited. In particular, the police did not advise that her prior statement could not be used. * * * nothing was said or done to dispel the oddity of warning about legal rights to silence and counsel right after the police had led her through a systematic interrogation, and any uncertainty on her part about a right to stop talking about matters previously discussed would only have been aggravated by the way Officer Hanrahan set the scene by saying 'we've been talking for a little while about what happened on Wednesday the twelfth, haven't we?' App. 66. The impression that the further questioning was a mere continuation of the earlier questions and responses was fostered by references back to the confession already given. It would have been reasonable to regard the two sessions as parts of a continuum, in which it would have been unnatural to refuse to repeat at the second stage what had been said before. These circumstances must be seen as challenging the comprehensibility and efficacy of the Miranda warnings to the point that a reasonable person in the suspect's shoes would not have understood them to convey a message that she retained a choice about continuing to talk." Id. at 615-17 (footnotes and citations omitted).

[P35] The situation in the case before us is more like *Seibert* than *Elstad*. Detective Olinger was an experienced detective and was aware of the DNA results before he interviewed Dudley. Olinger did not administer *Miranda* warnings at the outset of the discussion, nor did he inform Dudley about the DNA results. Olinger showed Dudley photographs of the victim and elicited Dudley's statement that he did not know B.C., and had done nothing. The interview also took place in prison, where Dudley was not free to leave. After eliciting Dudley's statements, the same detective, Olinger, proceeded directly to the Miranda warnings, the waiver of such, and a second round of questions, which elicited answers similar to those Dudley had already provided. Furthermore, while Dudley was not subjected to the

exhaustive type of pre-interview that the officers conducted in *Seibert*, there is no doubt that Dudley's interrogations were not independently conducted. There is also no indication that Olinger told Dudley that his prior statements could be used against him. Accordingly, trial counsel should have filed a motion to suppress Dudley's statements.

[P36] Counsel's error, however, did not affect the judgment, because Dudley would have been required to testify in order to establish consent. The victim denied knowing Dudley, and Dudley's testimony would have been the only way to establish that the sexual contact was consensual, rather than the result of force. In that situation, the State would have been permitted to introduce Dudley's prior inconsistent statements on rebuttal, despite any *Miranda* violation. See, *e.g., Harris v. New York* (1971), 401 U.S. 222, 225-26, 91 S.Ct. 643, 28 L.Ed.2d 1 (noting that "The shield provided by *Miranda* cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances"). Accord, *United States v. Havens* (1980), 446 U.S. 620, 100 S.Ct. 1912, 64 L.Ed.2d 559; *State v. Hill* (1996), 75 Ohio St.3d 195, 207, 1996 Ohio 222, 661 N.E.2d 1068; and *State v. Conway*, 108 Ohio St.3d 214, 2006 Ohio 791, at P 90, 842 N.E.2d 996 (noting that defendant's recorded statements, although obtained in violation of the Sixth Amendment right to counsel, are admissible to impeach defendant's untruthful trial testimony). Accordingly, Dudley's first contention under the First Assignment of Error is without merit.

*State v. Dudley*, 2010 Ohio 3240, ¶¶ 22-36, 2010 Ohio App. LEXIS 2749 (2nd Dist. July 9, 2010).  In sum, the court of appeals found Dudley's statements were taken from him in violation of *Miranda* and that trial counsel should have filed a motion to suppress, but that counsel's deficient performance was not prejudicial because Dudley's statements would have been admitted anyway.

The interrogation of which Dudley complains was conducted at the Chillicothe Correctional Institution, where he was serving a sentence on an unrelated felony (Traverse, Doc. No. 12, PageID 2048).  Dudley admits that he refused to give Detective Olinger a DNA sample even though Olinger had not told him that his DNA had been identified in B.C.'s sexual assault

kit. *Id.* at PageID 2050.

Dudley asserts he was prejudiced by his counsels' failure to move to suppress "because without his statements there would be reasonable doubt as to whether Petitioner was the rapist . . ." *Id.* at PageID 2051.  As proof that there would have been reasonable doubt without the statements, Dudley points to the inability of B.C. to positively identify him and some possible incompleteness in her testimony about what she was doing the morning of the rape.  He also notes that the State could not show his DNA on the hat left at the scene or on B.C.'s underwear, "because the state conveniently destroyed all the evidence in this case."  *Id.* at 2052.  Dudley emphasizes that the improper statements were taken from him three years before trial and states that is when the *Miranda* violation occurred. *Id.* Because no testimony from live witnesses placed him anywhere near the scene of the rape when it happened, "this conviction was based on the DNA evidence in conjunction with Petitioner's statements . . . ."

Dudley notes the absence of eyewitness testimony, even by the victim.  But eyewitness testimony, particularly in cross-racial[3] rape cases, is often inaccurate.  In the first 250 DNA exonerations in this country, inaccurate eyewitness testimony was the most frequent cause.  See Garrett, Convicting the Innocent:  Where Criminal Prosecutions Go Wrong (2012).

Dudley also accuses the State of "conveniently" destroying the victim's underwear and the perpetrator's cap.  But what is really convenient is Dudley's insinuation that that evidence would have been exonerating.  There is absolutely no evidence of record from which this Court could infer that the State destroyed evidence which would have been helpful to Dudley.

What Dudley is unable to explain away is his DNA on B.C.'s vaginal swab.  Not one, but two, DNA analyses confirmed to a scientific certainty that he was the sperm donor. *State v. Dudley, supra,* ¶ 20.  "Scientific certainty" in this case was testified to mean that only one

---

[3] Dudley told Olinger he does not like white girls.

individual in 6.8 trillion would have had the same DNA at the tested alleles.  *Id.* 6.8 trillion is about 1,000 more people than existed on earth at the time of the crime, and only about half of them could be sperm donors.

Dudley is correct, as the court of appeals found, that Detective Olinger's questioning boxed him out of claiming B.C. consented to the sexual conduct.  Had he taken the stand and claimed consent, his statement that he had never met B.C. or been in her vicinity on the date of the rape could have been used to impeach him.  But Dudley ignores and makes no attempt to refute the court of appeals holding that if he had taken the stand to claim consent, his statements could have been used against him despite the *Miranda* violation.  *State v. Dudley, supra,* at ¶ 36, *citing, inter alia, Harris v. New York,* 401 U.S. 222 (1971).

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court.  28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. ___, 131 S. Ct. 770, 785 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000).

The Second District Court of Appeals decided Dudley's First Ground for Relief on the merits of his constitutional claim of ineffective assistance of trial counsel.  Dudley has not demonstrated that this decision was an objectively unreasonable application of *Strickland, supra*, and its progeny.  The First Ground for Relief should be dismissed with prejudice on the merits.

**Ground Two:  Double Jeopardy**


In his Second Ground for Relief, Dudley claims his separate convictions and consecutive

sentences for rape and kidnapping violate the Double Jeopardy Clause of the United States

Constitution and that his trial attorney was ineffective for not raising this claim.

This was part of the second contention in the First Assignment of Error on direct appeal[4]

and the court decided it as follows:

> **[P43]** Dudley contends that the rape and kidnapping charges
> should have been merged, because his alleged movement and
> restraint of B.C. had no significance apart from facilitating the
> rape. We disagree.
>
> **[P44]** In *State v. Logan* (1979), 60 Ohio St.2d 126, 397 N.E.2d
> 1345, the Supreme Court of Ohio concluded that rape and
> kidnapping are allied offenses of similar import under R.C.
> 2941.25(A), because "implicit within every forcible rape * * * is a
> kidnapping." Id. at 130. After making this comment, the Supreme
> Court of Ohio then considered the second prong of the test, which
> evaluates a defendant's conduct. In this context, the court observed
> that:
>
> **[P45]** "The primary issue, however, is whether the restraint or
> movement of the victim is merely incidental to a separate
> underlying crime or, instead, whether it has a significance
> independent of the other offense. In the instant case, the restraint
> and movement of the victim had no significance apart from
> facilitating the rape. The detention was brief, the movement was
> slight, and the victim was released immediately following the
> commission of the rape. In such circumstances, we cannot say that
> appellant had a separate animus to commit kidnapping.
>
> **[P46]** "We adopt the standard which would require an answer to
> the further question of whether the victim, by such limited
> asportation or restraint, was subjected to a substantial increase in
> the risk of harm separate from that involved in the underlying
> crime. If such increased risk of harm is found, then the separate
> offense of kidnapping could well be found. For example,

---

[4] The other part asserted that all of the sexual offenses should have been merged.  Dudley was successful in urging
this claim on the state courts.

prolonged restraint in a bank vault to facilitate commission of a robbery could constitute kidnapping. In that case, the victim would be placed in substantial danger." Id. at 135.

[P47] In *Logan*, the victim was accosted at the entrance to an alley, and was forced down the alley, around a corner and down a flight of stairs, where she was raped. She was then immediately released. *Id*. at 126-27. Under these circumstances, the Supreme Court of Ohio concluded that the detention and asportation were incidental, and that no separate animus existed. Id. at 135-36.

[P48] In contrast, in *State v. Craig*, 110 Ohio St.3d 306, 2006 Ohio 4571, 853 N.E.2d 621, the Supreme Court of Ohio concluded that a separate animus existed, where the defendant abducted the victim while she was walking home and took her to a nearby apartment, where he raped and killed her. Id. at P 118.

[P49] In *State v. Greathouse*, Montgomery App. No. 21536, 2007 Ohio 2136, we found the existence of a separate animus for kidnapping and rape, where the defendant forced the victim to drive around for some time in an automobile before the rape. We noted that the detention posed a substantial risk of harm to the victim, as the defendant threatened to crash and burn the car with the victim inside. The defendant also threatened to shoot and kill the victim. And finally, the hazard of traveling in the car increased the risk of harm to the victim. Id. at P 46. Conversely, in *State v. Winn*, 173 Ohio App.3d 202, 2007 Ohio 4327, 877 N.E.2d 1020, we found no separate animus in an aggravated robbery and kidnapping situation, where the defendant moved the victim only a few steps from the hallway to her bedroom, and only briefly restrained her. We additionally observed that the restraint was not secretive, and did not involve a substantial movement, or increase in risk to the victim. Id. at P 33.

[P50] In the case before us, Dudley first restrained B.C. when he tackled her, caused both parties to fall over a guardrail, and landed on top of B.C. These actions posed a substantial risk of harm to B.C., and, did, in fact, cause harm to her ankle. Dudley then grabbed B.C. by the hair and dragged her fifty or sixty feet to the woods. This again posed a substantial risk of harm to B.C., was more than a brief restraint, and was secretive. While Dudley restrained B.C., he also threatened to kill her. And finally, when Dudley left, he told her that if she moved before he came back, he would kill her. He also took B.C.'s pants and shoe, subjecting her to a risk of harm due to the cold and damp weather. Under the circumstances, we conclude that a separate animus existed for the

kidnapping and rape. Dudley's counsel, therefore, did not act ineffectively by failing to object to separate sentences for the rape and kidnapping convictions.

*State v. Dudley, supra*, ¶¶ 43-50.

The Double Jeopardy Clause of the United States Constitution affords a defendant three basic protections:  "It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction.  And it protects against multiple punishments for the same offense."  *Brown v. Ohio*, 432 U.S. 161, 165(1977), *quoting North Carolina v. Pearce*, 395 U.S. 711, 717 (1969).  The Double Jeopardy Clause of the Fifth Amendment was held to be applicable to the States through the Fourteenth Amendment in *Benton v. Maryland*, 395 U.S. 784, 794 (1969).

The test for whether two offenses constitute the same offense for Double Jeopardy purposes is "whether each offense contains an element not contained in the other."  *United States v. Dixon*, 509 U.S. 688, 696 (1993); *Blockburger v. United States*, 284 U.S. 299, 304 (1932). Where two offenses are the same for *Blockburger* purposes, multiple punishments can be imposed if the legislature clearly intended to do so. *Albernaz v. United States*, 450 U.S. 333, 344 (1981); *Missouri v. Hunter*, 459 U.S. 359, 366 (1983); *Ohio v. Johnson*, 467 U.S. 493, 499 (1984); and *Garrett v. United States*, 471 U.S. 773, 779 (1985). *White v. Howes*, 586 F.3d 1025, 1035 (6th Cir. 2009)("The current jurisprudence allows for multiple punishment for the same offense provided the legislature has clearly indicated its intent to so provide, and recognizes no exception for necessarily include, or overlapping offenses.")  The *Blockburger* test is a rule of statutory construction, not a constitutional test in itself.  *Volpe v. Trim*, 708 F.3d  688 (6th Cir. 2013), *citing Albernaz*.  "When assessing the intent of a state legislature, a federal court is bound by a state court's construction of that state's own statutes."  *Volpe, citing Banner v. Davis*, 886

F.2d 777, 780 (6th Cir. 1989).

The Ohio courts, through interpretation of Ohio Revised Code § 2941.25, have found that rape and kidnapping can be separately punished if there is a "substantial increase in the risk of harm arising from the kidnapping as opposed to the rape itself." *State v. Dudley, supra, citing State v. Logan*, 60 Ohio 2d 126 (1979). Applying that analysis, the Second District Court of Appeals found that the kidnapping substantially increased the risk of harm to B.C. *Id.* at ¶ 50.

Dudley argues that this decision was "'Unreasonable" and Contrary to Well established **Ohio** Law. . . . (emphasis added)" But as noted above, federal courts in habeas corpus cases are bound by state court interpretations of state law, even the interpretations given in the case in suit. Federal habeas courts have authority to grant the writ only if the state courts have unreasonably applied clearly established federal law as determined by the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. ___, 131 S. Ct. 770, 785 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000). The Second District Court of Appeals decision is not an unreasonable application of Supreme Court precedent with respect to Double Jeopardy or with respect to ineffective assistance of trial counsel. Ground Two should therefore be dismissed with prejudice on the merits.


## Conclusion


In accordance with the foregoing analysis, the Magistrate Judge respectfully recommends that the Petition herein be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the

Court should certify to the Sixth Circuit that any appeal would be objectively frivolous.


July 16, 2013.

s/ *Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).