# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

RONALD E. DUDLEY,

        Petitioner,  :                  Case No. 3:13-cv-058

  - vs -                                District Judge Timothy S. Black
                                            Magistrate Judge Michael R. Merz

JASON BUNTING, Warden,

        Respondent.  :

## SUPPLEMENTAL REPORT AND RECOMMENDATIONS

This habeas corpus case is before the Court on Petitioner's Objections (Doc. No. 15) to the Magistrate Judge's Report and Recommendations (the "Report," Doc. No. 14).  Judge Black has recommitted the case for reconsideration in light of the Objections (Doc. No. 16).

**Analysis**

The Grounds for Relief pled in the Petition were dealt with in the Report in the order that both Respondent and the Petitioner argued them.  Dudley has structured his Objections in the same way, so that order is preserved in this Supplemental Report.

**Ground Five: Denial of Due Process and Equal Protection on Appeal**

In his Fifth Ground for Relief, Dudley asserts the Second District Court of Appeals denied him due process and equal protection of the laws when it refused to consider his Ohio App. R. 26(B) application on the merits because he had filed it under the wrong case number. The details of the relevant filings and decisions of the court of appeals are set out in the Report (Doc. No. 14, PageID 2092-93).

The Report concluded that Dudley had procedurally defaulted on the claims of ineffective assistance of appellate counsel which underlay his 26(B) Application to the court of appeals because he had filed the 26(B) Application in the wrong case.

This was not a simple matter of a typographical error as Dudley asserts in his Objections (Doc. No. 15, PageID 2121).  Rather, Dudley had two different cases pending in the Second District Court of Appeals and he correctly typed the number of the wrong case on his 26(B) Application. The Clerk of Courts then filed the Application in the wrong case and the court of appeals decided the Application as if Dudley had intended to file it in the case whose number he put in the caption.

Dudley asks that his error be treated as excusable neglect or inadvertence. What he is really asking is that this Court force the Second District Court of Appeals to treat his error as excusable neglect by overturning its finding of procedural default on these claims. But nothing in the United States Constitution compels a state appellate court to excuse a *pro se* litigant's filing a pleading in the wrong case.

Dudley also complains that the Magistrate Judge did not "mention what Rule is particularly implied." (Objections, Doc. No. 15, PageID 2122.) In the Report, the Magistrate

Judge wrote: "[h]ere the Ohio courts have a perfectly well understood rule: to seek relief in a case, a litigant must file the request for relief in that case, not in some other case the litigant might have or have had in the past in that court." (Report, Doc. No. 14, PageID 2094-95.) Dudley repeats the quoted language in the Objections (PageID 2123), but says the cited rule is to be found nowhere in Ohio R. App. P. 26(B). On the contrary, Ohio R. App. P. 26(B) reads in pertinent part: "(2)   An application for reopening shall contain all of the following:  (a) The appellate case number in which reopening is sought . . . ."

Dudley notes that at the time he had proceedings pending in a number of different courts, all with different case numbers and that this is the cause of his mistake. As noted in the Report, excusing cause must be external to the petitioner. *Hartman v. Bagley,* 492 F.3d 347, 358 (6th Cir. 2007); *Murray v. Carrier*, 477 U.S. 478 (1986). Dudley made an honest not-uncommon mistake, even among lawyers, but nothing in the United States Constitution provides that a state appellate court must excuse this kind of mistake and the Second District, for reasons it gave, did not.

The Report gives an alternative analysis of the merits of Dudley's ineffective assistance of appellate counsel claims and concludes they have no merit (Report, Doc. No. 14, PageID 2095-2100).

As noted in the Report (Doc. No. 14, PageID 2099), the record contains appellate counsel's, Brenner's, reasons for filing the assignments of error he did rather than the ones Dudley suggested, to wit, that he thought they were stronger and in fact Brenner did win a reversal. As further noted in the Report, in the Traverse Dudley failed to argue why his proposed assignments of error were stronger than those pled by Brenner. *Id.* Dudley now argues the merits of his proposed assignments of error in his Objections.

He claims the trial court erred by not granting a continuance for independent testing once

the State produced a second DNA report. However, the trial had been delayed for almost three years from indictment, mostly on defense motions. Dudley's claim that somehow a second independent test would have produced results favorable to him is purely speculative.

Dudley claims the trial court erred in denying his motion to dismiss for pre-indictment delay and cites *Barker v. Wingo,* 407 U.S. 514, 530-32 (1972). In that case the Supreme Court adopted a four-part balancing test to use in determining whether a defendant's right to a speedy trial has been violated: (1) the length of the delay; (2) the reasons for the delay; (3) whether the defendant has asserted his right; and (4) prejudice to the defendant. The crime in question occurred in 1994, but Dudley was not identified as a contributor tothe sperm fraction in the rape test kit until June 2005. *State v. Dudley,* 2010 Ohio 3240, ¶ 17, 2010 Ohio App. LEXIS 2749 (2nd Dist. July 9, 2010). Dudley was indicted in September, 2005, within three months of his identification as the prime suspect. Dudley argues he was prejudiced because at least one witness died, other witnesses suffered or may have suffered memory loss, and the State destroyed all the physical evidence aside from the rape kit. None of those things happened in the three months between his identification as a suspect and his indictment. Nor is he able to show that any of the loss of evidence was prejudicial to him. The deceased witness was a police officer, not likely to have been a defense witness. It is extremely unlikely that the victim's clothing would have yielded another suspect when Dudley's DNA was undoubtedly present on the sperm fraction extracted from the victim within hours of the rape. In any event, Dudley could not have been indicted until he was identified and he has shown no prejudice from the delay from identification to indictment.

Dudley asserts in his Objections that if the issue of the State's destruction of all physical evidence except the rape kit had been raised on appeal, it would have been successful

4

(Objections, Doc. No. 15, PageID 2128).  He asserts that he can show the bad faith required by *Arizona v. Youngblood*, 488 U.S. 51, 57 (1988).  But the only proof he has is that one of the detectives in the case apparently advised in April 1997 that all the evidence should be preserved.  His argument assumes that something about that physical evidence would have been exonerating, but nothing in the description of the evidence in the record suggests that. Certainly the evidence was not destroyed out of any particular animus toward Dudley who was not identified as a suspect until 2005.

Dudley asserts the issue on his ineffective assistance of appellate counsel claims is not which arguments would have been stronger, but his constitutional right to preserve all his claims from the trial court (Objections, Doc. No. 15, PageID 2130).  But that is not the law.  The Supreme Court has held an appellate attorney need not advance every argument, regardless of merit, urged by the appellant.  *Jones v. Barnes*, 463 U.S. 745, 751-752 (1983)("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." 463 U.S. 751-52). Effective appellate advocacy is rarely characterized by presenting every non-frivolous argument which can be made. *Joshua v. DeWitt*, 341 F.3d 430, 441 (6th Cir. 2003). *Williams v. Bagley,* 380 F.3d 932, 971 (6th Cir. 2004), *cert. denied,* 544 U.S. 1003 (2005); see *Smith v. Murray*, 477 U.S. 527 (1986).  Had Dudley desired to represent himself on appeal, he could have done so and raised whatever claims he thought appropriate.  Instead, he accepted the services of an attorney and is bound by that attorney's judgment, unless it constituted ineffective assistance of appellate counsel.

In sum, Dudley's Fifth Ground for Relief is unpersuasive on the merits as well as procedurally defaulted.

**Ground Three:  Failure to Disclose Favorable Evidence**

In his Third Ground for Relief, Dudley claims the prosecutor failed to disclose favorable evidence as required by *Brady v. Maryland*, 373 U.S. 83 (1963).  Dudley raised this claim for the first time in his petition for post-conviction relief.  The court of appeals held the claim was procedurally defaulted under Ohio's criminal *res judicata* doctrine because it could have been but was not raised on direct appeal.  *State v. Dudley*, 2010 Ohio 4152, ¶ 33, 2010 Ohio App. LEXIS 3524 (2nd Dist. Sept. 3, 2010).  On the authority cited in the Report (Doc. No. 14, PageID 2101), Ohio's criminal *res judicata* doctrine is an adequate and independent state ground of decision.

The Report concluded this Ground for Relief was procedurally defaulted unless Dudley could show excusing cause and prejudice.  In his Objections, he says the cause is ineffective assistance of appellate counsel.  But to rely on ineffective assistance of appellate counsel as excusing cause of a procedural default, a habeas petitioner must first bring that claim to the state courts.  *Edwards v. Carpenter,* 529 U.S. 446 (2000).  While Dudley made seven claims of ineffective assistance of appellate counsel in his misfiled 26(B) Application, this claim was not among them (For the list of claims raised, see Objections, Doc. No. 15, PageID 2123-24).

**Ground Four:  Pre-Indictment Delay**

The Report concluded this Ground for Relief was procedurally defaulted on the same basis as Ground Three.  Because Dudley did attempt to raise an ineffective assistance of appellate counsel claim based on pre-indictment delay, this claim is actually defaulted on the same basis as Ground Five, not Three.  But Dudley's argument to excuse that default (excusable neglect in filing in the wrong case) has already been rejected.  Furthermore, the analysis of the possible merits of this claim under Ground Five shows to the Magistrate Judge's satisfaction that the claim is without merit:  the State delayed only three months in filing an indictment once they identified Dudley as a suspect.

**Ground Six:  Admission in Evidence of Statements Obtained During an Illegal Custodial Interrogation**

In his Sixth Ground for Relief, Dudley asserts his statements made during custodial interrogation were improperly admitted against him because he was not properly advised of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966).  Respondent asserted that this claim had never been presented to the Ohio courts (Return of Writ, Doc. No. 11, PageID 1991-92).  Dudley claimed in his Traverse that he had fairly presented this Ground for Relief in his misfiled 26(B) Application  (Traverse, Doc. No. 12).  The Report recommended this Ground for Relief be dismissed as procedurally defaulted on the basis asserted by the Respondent (Report, Doc. No. 14, PageID 2102).

In his Objections, Dudley does not cite anywhere in the record where this claim was raised in the trial court.  Instead he relies again on his misfiled 26(B) Application (Objections,

Doc. No. 15, PageID 2140). But even in that Application, he did not allege that it was ineffective assistance of appellate counsel to fail to raise the *Miranda* claim (See list of omitted assignments of error in argument about Ground for Relief Five, Objections, Doc. No. 15, PageID 2123). So even if his misfiling were excused, he would still be in procedural default for never fairly presenting this claim to the state courts.

**Ground Seven: Failure to Establish Chain of Custody**

In his Seventh Ground for Relief, Dudley complains that the State failed to establish the chain of custody and that this violated his rights under the Confrontation Clause. Respondent claimed both procedural default and non-cognizability of this claim in habeas corpus. The Report found procedural default on the same basis as Grounds Three, Four, and Six and also that, given the admitted death of Detective Denle, there was no Confrontation Clause violation in substituting his written report for his live testimony (Report, Doc. No. 14, PageID 2103).

Dudley offers the same excuse as before: the claim was raised in the mis-filed 26(B) Application (Objections, Doc. No. 15, PageID 2141). But that is not so: chain of custody is not one of the seven omitted assignments of error raised in the 26(B) Application. Even if it had been, it would be procedurally defaulted on the same basis as Ground Five. And Dudley makes no response to the Report's conclusion that Detective Denle's death renders this Ground meritless.

**Ground One: Ineffective Assistance of Trial Counsel**

In his First Ground for Relief, Dudley asserted ineffective assistance of trial counsel from the failure of his trial counsel to file a motion to suppress. The Second District Court of Appeals denied this claim on the merits. *State v. Dudley*, 2010 Ohio 3240, ¶¶ 22-36, 2010 Ohio App. LEXIS 2749 (2nd Dist. July 9, 2010)(opinion quoted in Report, Doc. No. 14, PageID 2104-08).

Because the court of appeals decided this claim on the merits, this Court is obliged under the AEDPA to defer to that decision unless it is an objectively unreasonable application of clearly established Supreme Court precedent. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. ___, 131 S. Ct. 770, 785 (2011); *Brown v. Payton*, 544 U.S. 133, 140 (2005*); Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor*, 529 U.S. 362, 379 (2000).

Dudley objects that neither this Court nor the Second District has protected him from the *Miranda* violation to which he was subjected (Objections, Doc. No. 15, PageID 2142-43). But the question posed to both the Second District and this Court is not whether *Miranda* was violated by Detective Olinger; the Second District found that it was and this Court defers to that decision on the basis of the authority cited in the last paragraph. Instead, the question is whether it was ineffective assistance of trial counsel to fail to file a motion to suppress. The Second District found that it was not because there was no prejudice. All Dudley does in his Objections is to state that he was prejudiced without making any argument and without citing any Supreme Court precedent on ineffective assistance of trial counsel which was not followed here (See Objections, Doc. No. 15, PageID 2143).

**Ground Two: Double Jeopardy**

In his Second Ground for Relief, Dudley claims his separate convictions and consecutive sentences for rape and kidnapping violate the Double Jeopardy Clause. The Second District decided this claim on the merits. *State v. Dudley, supra,* ¶¶ 43-50, quoted in the Report, Doc. No. 14, PageID 2111-13.

The Double Jeopardy Clause permits multiple punishments for two crimes committed together if each crime has an element that the other does not (the *Blockburger* test) and if the state legislature intended that they be separately punished. Viewing the facts of this case as shown at trial, the Second District held that the kidnapping committed by Dudley created a substantially increased risk of harm to the victim than the rape alone.

In the Traverse, Dudley had argued this was an unreasonable application of Ohio law. As noted in the Report, that is not the test. A federal habeas court is bound by state court construction of state law, even if made in the very case in suit. In his Objections, Dudley argues again on the basis of Ohio law that he had no separate animus for the kidnapping than for the rape (Doc. No. 15, PageID 2144-45). But separate animus is not the relevant test for either Ohio Revised Code § 2941.25 or the Double Jeopardy Clause. A person acting with one animus – here, the intent to rape – can still be convicted of two crimes if they are not allied offenses of similar import. In Ohio, kidnapping is a separate offense from rape if the risk of harm to the victim is substantially increased by the kidnapping. Here the court of appeals found that Dudley tackled the victim, resulting in their both falling over a guardrail. He then dragged her fifty or sixty feet into the woods, threatened to kill her, and took her shoes and pants in cold and damp weather. The determination by the court of appeals that this substantially increased her risk of

10

harm is plainly not an unreasonable determination of the facts in light of the evidence presented.

**Conclusion**

Having reconsidered the case in light of the Objections, the Magistrate Judge again respectfully recommends it be dismissed with prejudice, that Dudley be denied a certificate of appealability, and that the Court certify that any appeal would be objectively frivolous.

August 6, 2013.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).